**STATE of Tennessee, Plaintiff–Appellant,**

v.

**Steve MAYES, Defendant–Appellee.**

Supreme Court of Tennessee,
at Knoxville.

May 10, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, for plaintiff-appellant.

Tim S. Moore, Newport, for defendant-appellee.

## OPINION

DROWOTA, Justice.

The Defendant, Steve Mayes, was convicted by a jury of selling a Schedule II controlled substance and received a six year term of imprisonment. The Court of Criminal Appeals reversed the conviction on the basis that there was a material variance between the indictment and the proof presented at trial. Specifically, the indictment alleged that the illegal sale was made to an undercover informant when, in fact, it was made to someone else acting as a "front" for the informant. We granted the State's Rule 11 application to decide

whether a variance between an indictment and proof presented at trial is material and prejudicial when the indictment alleges a drug sale to a named buyer but the proof establishes the sale was made to an intermediary. We answer in the negative and, accordingly, reverse the Court of Criminal Appeals and reinstate the judgment of the trial court.

## I.

On October 23, 1989, Officer Mike Finley of the Third Judicial Task Force[1] was introduced to Shirley Ward by a detective of the Hamblen County Sheriff's Department. The meeting took place to discuss the possibility of Ward serving as an informant in illegal drug transactions. Ward agreed to serve as a confidential informant.

Two days later, on October 25, 1989, Finley met with Ward to discuss a drug purchase. He gave her $160 to purchase illegal narcotics and equipped her with a hidden recording and transmitting device. After meeting with Finley, Ward, driving a van, picked up a friend, Jeanie Hopson, Hopson's baby, and another individual, Patty Boring. All three women were drug addicts. The women drove to a pay phone where Hopson attempted to call the Defendant, Steve Mayes, an individual known to the women to be a supplier of drugs. Unable to reach the Defendant by phone, they drove around (with narcotics officers following) until they located the Defendant at a fast food restaurant. After parking the van in the parking lot of an adjacent restaurant, Ward asked Hopson to purchase the drugs from the Defendant because Ward believed that the Defendant would not sell them to her. Hopson agreed, took the money from Ward, and met the Defendant inside the restaurant. A short time later, Hopson and the Defendant emerged from the restaurant and exchanged the money for four Dilaudid pills. After Hopson returned to the company of her companions, the three women dissolved two of the Dilaudid pills in water and injected themselves with the drug. Officers were

nearby monitoring these events by sight and sound. Ward later gave Officer Finley the two remaining Dilaudid pills.

A few months after the illegal sale described above, the Defendant and Hopson were both charged with selling or delivering a controlled substance to Ward. The indictment read:

> Steve Mayes and Jeanie Hopson on or about the 25th day of October, 1989, in the State and County aforesaid did unlawfully and feloniously sell or deliver to Shirley Ward, a controlled substance classified as Schedule II under the Tennessee Drug Control Act of 1971, as amended, to-wit: two tablets containing hydromorphone [Dilaudid].

The Defendant was convicted of selling a Schedule II controlled substance and was sentenced to six years imprisonment. The trial court found that the Defendant sold the drugs to Hopson who was acting as an agent, or front, for Ward. The trial court determined that the variance between the indictment and the proof was not material and did not prejudice the Defendant's rights because the indictment provided sufficient notice of the charges against him. Over a dissent by Judge Jerry Scott, the Court of Criminal Appeals reversed and dismissed the indictment, holding that with the indictment alleging the Defendant sold drugs to Ward and the proof establishing that he sold them to Hopson, the variance was material and prejudicial. According to the intermediate court's majority, the Defendant "was misled in that he had to prepare a defense against the allegation that he sold drugs to Ms. Ward. In reality, however, he never sold anything to Ms. Ward." The dissent argued that the variance was harmless because the identity of the buyer was not an element of the offense charged, the variance did not mislead the Defendant, and did not otherwise hamper the preparation of his defense.

## II.

The United States Supreme Court, in *Berger v. United States*, 295 U.S.

---

1. The Tennessee Third Judicial Task Force was responsible for illegal drug enforcement in a four-county area: Hamblen, Hawkins, Hancock and Greene.

78, 82, 55 S.Ct. 629, 629, 79 L.Ed. 1314 (1935), held that reversible error exists only when the variance between the indictment and the proof is such that it affects the substantial rights of the defendant. Specifically, a variance is not fatal if (1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds. *Id.*, 295 U.S. at 79–82, 55 S.Ct. at 630; *see also Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). The variance is not to be regarded as material when the indictment and proof substantially correspond. *Berger*, 295 U.S. at 82–84, 55 S.Ct. at 631. A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment. *Russell*, 369 U.S. at 791–93, 82 S.Ct. at 1062 (Harlan, J., dissenting).

This Court, in *State v. Moss*, 662 S.W.2d 590 (Tenn.1984), adopted the same standard for evaluating variations between an indictment and the evidence presented at trial. The Court in *Moss* laid aside "the early common law rule that very strict conformity was required between the allegations of the indictment and the proof, even in minor and immaterial respects." *Id.* at 592. The Court in *Moss* announced the following test:

> Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his

defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Id.* at 592.[2] Such an approach is consistent with the test of an indictment's sufficiency which is the "adequacy of the notice to the defendant conveyed by its terms." *State v. Estes*, 199 Tenn. 406, 287 S.W.2d 40, 42 (1956).

In *State v. Bell*, 125 N.H. 425, 480 A.2d 906 (1984), the New Hampshire Supreme Court was faced with the question of whether it was appropriate to set aside a conviction for selling an illegal drug when the indictment alleged that the sale was made to a specified police officer but the proof presented at trial revealed that the sale was actually made to an informant working with the officer. The conviction was affirmed because, according to the court, the substance of the crime was the sale itself, not the identity of the purchaser. *Id.*, 480 A.2d at 909. The court explained that "the identity of the purchaser merely serves to describe the offense charged and forms no part of its substance." *Id.* Thus, the court held that the identity of the purchaser was not an element of the offense. *Id.* The identity of the purchaser did not even have to be charged or proven:

> Whether the identity of the purchaser of illicit drugs is an element of the offense which must be alleged and proved to support a conviction has been addressed by numerous federal and state courts. The federal courts have repeatedly held that the identity of the purchaser is not an element which must

---

2. The Court in *Moss* continued: "The policy now followed in this and in most other jurisdictions is that before a variance will be held to be fatal it must be deemed to be material and prejudicial. A variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the

same offense. *Brown v. State,* 186 Tenn. 378, 389, 210 S.W.2d 670, 675 (1948); *State v. Morrow,* 530 S.W.2d 60, 63 (Tenn.1975); *Bolton v. State,* 617 S.W.2d 909 (Tenn.Cr.App.1981); *State v. Cox,* 644 S.W.2d 692, 695–96 (Tenn.Cr.App. 1982); *Hamm v. Commonwealth,* 270 Ky. 574, 110 S.W.2d 305 (1937); *State v. Brasslett,* 451 A.2d 890, 893 (Me.1982); 41 Am.Jur.2d *Indictments and Informations* §§ 260, 262 (1968)." *Moss,* 662 S.W.2d at 592.

be alleged and proved to support a conviction under the federal drug statutes. *See United States v. Cosby*, 529 F.2d 143, 146 (8th Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976); *Hemphill v. United States*, 392 F.2d 45, 47 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968); *Flores v. United States*, 338 F.2d 966, 967 (10th Cir.1964); *Rivera v. United States*, 318 F.2d 606, 607 (9th Cir.1963). Many State courts have reached the same conclusion under their respective drug acts. *See State v. LeMatty*, 121 Ariz. 333, 336, 590 P.2d 449, 452 (1979); *Mora v. People*, 172 Colo. 261, 264, 472 P.2d 142, 144 (1970); *People v. Adams*, 46 Ill.2d 200, 203, 263 N.E.2d 490, 491 (1970), *aff'd*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Carter v. State*, 521 P.2d 85 (Okla.Crim.1974). Only one jurisdiction has held the identity of the purchaser of illicit drugs to be an element of the offense. *State v. Ingram*, 20 N.C.App. 464, 466, 201 S.E.2d 532, 534 (1974).

*Id.*, 480 A.2d at 908–09. The conviction in *Bell* was also affirmed on the basis that since the indictment specified the charge as an unlawful drug sale which occurred at a specified time at a specified place, the defendant was sufficiently apprised of the nature of the charge against him. *Id.*, 480 A.2d at 910. Thus, he could adequately prepare his defense and was not prejudiced in this regard.

The Supreme Court of Nevada has taken the same approach to the variance question presented. In *State v. Jones*, 96 Nev. 71, 605 P.2d 202 (1980), the defendant was indicted for selling heroin to a narcotics officer, Officer Jolley. The evidence at trial, however, revealed that Jolley had given an informant $200 to make the actual purchase. The informant took the money, made the purchase of the heroin from the defendant, and later turned the drug over to Jolley. *Id.*, 605 P.2d at 203. The defendant argued, as the Defendant argues in the case at bar, that he could not be found guilty because the indictment specifically stated that the sale was to Jolley, but the evidence at trial revealed that the sale was

actually made to the informant. *Id.*, 605 P.2d at 204. The state countered, as the State argues in the instant case, that the variation between the proof at trial and the indictment was immaterial because the defendant made the sale at the specified time and place and because the informant was acting as the agent, or front, for Jolley in purchasing the heroin. *Id.*

Like the New Hampshire Supreme Court in *Bell*, the court in *Jones* held that the variance was not fatal because the indictment properly identified the defendant, the crime, and the date and place of the sale. *Id.*, 605 P.2d at 205. Thus, "it is apparent that the [defendant] was sufficiently informed of the nature of the offense so as adequately to prepare his defense." *Id.*, 605 P.2d at 205. The court also held that double jeopardy would bar another prosecution for the same drug transaction. *Id.*, 605 P.2d at 206. *See also State v. Burns*, 795 S.W.2d 527 (Mo.App.1990) ("The charge in an indictment or information alleging the sale of a controlled substance to a specified person can be treated as surplusage if the proof showed that the sale was to another person not named, since the identity of the buyer is not an essential element of the offense.").

■ We are persuaded that the approach taken by the foregoing cases is sound. We hold, therefore, that where the indictment specifies the purchaser of illegal narcotics but the proof reveals that another person made the actual buy, the variance is not material and does not prejudice the defendant's substantial rights, provided (1) the indictment otherwise sufficiently informs the defendant of the charge against him such that he will not be misled and can adequately plan a defense and (2) the variance is such that the defendant cannot be prosecuted again for the same offense due to double jeopardy principles. This is the same standard utilized by the U.S. Supreme Court, *see Berger* and *Russell, supra*, and adopted by this Court in *Moss, supra*.

### III.

■ In view of the foregoing discussion, we hold that the Defendant's conviction of

selling a Schedule II drug should be upheld. As noted by the dissent of Judge Scott in this case, T.C.A. § 39–6–417(a) [now T.C.A. § 39–17–417] makes it "unlawful for any person to ... deliver [or] sell ... a controlled substance...." Nowhere in the statute does it indicate that the identity of the purchaser is an element of the offense. We join the state and federal jurisdictions discussed above and conclude that the identity of the purchaser is not an element which must be alleged in the indictment or proven at trial to support a conviction under our drug statute. Since the identity of the buyer is not an element of the offense, the allegation in the indictment that the Defendant sold the illegal narcotic to Ward can be treated as surplusage when viewed in the context of the statements below.

We must also determine whether the variance could have misled the Defendant or could have deprived him of his right to be protected against further prosecution for the same drug transaction. *Berger*, 295 U.S. at 79–82, 55 S.Ct. at 630; *Moss*, 662 S.W.2d at 592. The Defendant's argument is that "[d]efense counsel apparently needs clairvoyance in order to be prepared for trial. In fact, based on the State's position, the defense would be just as well off, and perhaps better off, if there was no specific charging instrument at all." This argument is unpersuasive.

As noted above, T.C.A. § 39–6–417(a) does not even mention the purchaser. The gravamen of the offense is the sale itself. The identity of the actual purchaser serves only to describe the offense charged and forms no part of its required substance. The indictment in this case correctly identified the Defendant, the crime alleged, the type of drug sold, and the date and place of the sale. The Defendant knew he was defending the charge of an unlawful sale under T.C.A. § 39–6–417(a) of a specified drug at the time and place in question. The Defendant was thus sufficiently informed of the nature of the offense so as to adequately prepare for trial. Accordingly, the variance did not affect the substantial rights of the Defendant. It did not impair his ability to prepare his case or defend himself. We hold that the Defendant has failed to establish a material variance so as to prejudice his rights.[3]

Finally, the indictment in this case is sufficiently specific to enable the Defendant to plead double jeopardy as a bar to any further prosecution in light of his conviction. The Defendant can rely upon the entire record in the event that future proceedings are taken against him for the same offense. The record leaves no doubt that the Defendant has been once placed in jeopardy for the sale of the drugs at the time and place set forth in the indictment. The indictment, coupled with the record, would certainly prohibit another prosecution for the drug sale at the time and place specified in that document. Accordingly, we do not perceive double jeopardy as an issue because the Defendant cannot be prosecuted again for the illegal transaction described herein.

For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is reinstated. The case is remanded to the trial court for any necessary proceedings. Costs are taxed to the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

**3.** We note in passing that the indictment alleges that the Defendant sold *or delivered* the drugs to Ward. The proof revealed that the Defendant constructively delivered the drugs through his co-defendant, Hopson, to Ward. Hopson was merely acting as a "front" for Ward.