Rockingham
No. 2009-882

THE STATE OF NEW HAMPSHIRE

v.

THOMAS WINWARD

Argued: January 20, 2011
Opinion Issued: February 25, 2011

534

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Law Office of Shepherd & Osborne, PLLC*, of Nashua (*Mark Osborne* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Thomas Winward, appeals his conviction by a jury on one count of attempted burglary. *See* RSA 635:1 (2007); RSA 626:8 (2007); RSA 629:1 (2007). We affirm.

The jury could have found the following facts. On June 1, 2008, at approximately 1:30 a.m., Mark Fitzpatrick heard noise coming from the right side of his home, located at 144 Pelham Road in Salem. He walked from the family room to the living room and saw his cat pacing back and forth in front of a window. He looked out the windows on the right side of his front door and observed a man crouched down looking in the window.

He then turned on the outside lights and saw two other men, one of whom he later identified as the defendant, run out from between a bush and a railing near his dining room window. The defendant and two other men, Daniel Smith and Shawn Mahoney, ran past Fitzpatrick and north on Pelham Road before stopping under a streetlight, which was about a four-to-five-minute walk from the Fitzpatricks' home.

Liana Peterson, who lived across the street from where the men stopped, heard their voices through her open bedroom window. She testified that they sounded "panicky," and heard one of the men say, "I didn't mean it; I don't know what happened." She then heard one of them say, "we're dead, we're dead," and a different man reply, "but we're not dead yet." She listened to them talk for about ten to fifteen minutes, and then called the police. The men subsequently left and continued walking north on Pelham Road.

In the meantime, Fitzpatrick also called the police and went outside to look around his home. In back of his home, he found a bent window screen in the grass approximately twenty feet from the window. He also found three sets of footprints in the front yard. A Salem police detective later observed marks on the window glass from "four fingers and a thumb that [had] pushed directly upward," and surmised that the screen had been pried off with some sort of tool.

Salem Police Officer Hicham Michael Geha responded to a report of an attempted burglary in progress and began canvassing the area on foot. He heard noise in the woods and observed the defendant, who fit the description provided by Fitzpatrick, hiding behind bushes. When Geha approached the defendant, he began running. Once Geha caught up with the defendant, he was uncooperative, verbally abusive and physically resistive to Geha's efforts to arrest him and place him in a police cruiser. The defendant was uncooperative and physically aggressive when later questioned by a detective regarding the whereabouts of any accomplices. The police also arrested Smith and Mahoney that night.

The defendant was indicted on one felony count of attempted burglary. The indictment alleged that:

1. Thomas Winward, acting in concert with and/or aided by Daniel Smith and Shawn Mahoney and with the purpose that the crime of Burglary be committed,

2. tried to gain entry to the Fitzpatrick residence, located at 144 Pelham Road,

3. an occupied structure adapted for the overnight accommodation of persons,

4. the dwelling of another at night,

5. at a time when the premises were not open to the public,

6. without license or privilege to enter,

7. by removing a window screen,

8. which, under the circumstances as Winward believed them to be, constituted a substantial step toward the commission of Burglary.

At trial, following the close of the State's case, the defendant moved to dismiss, arguing that the State had to prove that he himself removed the window screen, and had not presented sufficient evidence that he did so. The defendant further asserted that because the indictment alleged that he himself removed the screen, the court should instruct the jury that he could be convicted only if it found that he personally removed the screen. The Trial Court (*Lewis*, J.) denied the motion, agreeing with the State that the indictment charged the defendant both as a principal and as acting in concert with Mahoney and Smith. Accordingly, the State did not have to prove which one of them removed the screen. The defendant argued that the court's ruling constructively amended the indictment. However, the court again determined that the indictment encompassed the activity of all three men, and, therefore, its ruling did not alter the indictment.

Prior to the close of trial, the defendant offered a proposed jury instruction that his mere presence at the scene alone was insufficient to prove accomplice liability. The court declined to give such an instruction because it was concerned about commenting on the evidence. Instead the court instructed the jury, in pertinent part:

[T]o prove that the Defendant was an accomplice to the crime of attempted burglary, the State must prove beyond a reasonable doubt that the crime of attempted burglary took place and that the Defendant was an accomplice. The State is not required to prove that a particular individual committed the crime of attempted burglary, only that the crime of attempted burglary took place and that the Defendant was an accomplice to the crime. To prove that the defendant was an accomplice, the State must prove[:]

1. That the Defendant actively helped another or other persons, or actively participated or actively assisted another or other persons, or actively attempted to help another or other persons to commit the crime of attempted burglary. Here the State alleges that the Defendant acted, in concert with and/or aided by Daniel Smith and Shawn

Mahoney, in trying to gain access to the Fitzpatrick residence by removing a window screen.

During deliberations, the jury submitted a question to the court, asking: "If we believe that someone else other than the defendant remove[d] the screen, and that the defendant had no knowledge or participation of this action[,] [i]s the defendant guilty of being in concert with[?]" The court declined to specifically answer the question and referred the jury to its instruction on accomplice liability. The jury subsequently convicted the defendant and this appeal followed.

On appeal, the defendant argues that: (1) the trial court erred when it refused to instruct the jury that the State had to prove he actually removed the window screen, and in failing to give that instruction, the court constructively amended the indictment; (2) the trial court erred in refusing to instruct the jury that mere presence at the crime scene is insufficient to make a person criminally responsible; (3) the trial court erred when it refused to answer the jury's question; and (4) the evidence was insufficient to sustain his conviction.

I

The defendant first argues that the court unsustainably exercised its discretion and constructively amended the indictment when it refused to instruct the jury that the State had to prove that he himself removed the window screen. He asserts that this impermissible amendment prejudiced him in the preparation and presentation of his defense.

■ "The requirement that a defendant be tried only for crimes for which he or she has been indicted, see N.H. CONST. pt: I, art. 15, is not violated whenever a trial judge provides a jury instruction that does not mirror the indictment." *State v. Doucette*, 146 N.H. 583, 590 (2001) (quotation omitted). "Instructions that alter the form of the indictment, without altering its substance, are always permissible. Jury instructions that change an element of an offense charged by a grand jury are automatically in error." *Id.* (citation omitted). "In between these two extremes is the amendment that does not alter the crime charged in the indictment, but changes an allegation in the indictment that has the effect of specifying and circumscribing the scope of the crime alleged." *Id.* (quotation and ellipsis omitted).

■ We have previously determined that an indictment charging a defendant as a principal also alleges accomplice liability because the "distinction between principal and accomplice liability for charging purposes lacks practical significance." *State v. Barton*, 142 N.H. 391, 395 (1997). While an indictment that charges the defendant as a principal puts a defendant on notice to prepare a defense as to both principal and

accomplice liability, *State v. Duran*, 158 N.H. 146, 151 (2008), we have also "consistently stated that language in an indictment alleging that a defendant acted 'in concert with' another is sufficient to charge the defendant both as a principal and as an accomplice," *State v. Munson*, 146 N.H. 712, 716 (2001) (quotations and ellipsis omitted).

The defendant contends that the State had to prove that he removed the window screen. The defendant bases his argument, in part, upon a misreading of the indictment. While the defendant's brief purports to quote the indictment, the brief adds the defendant's name in two places where it does not appear in the actual indictment; specifically:

> 2. *Mr. Winward* tried to gain entry to the Fitzpatrick residence . . . .
>
> . . . .
>
> 7. *Mr. Winward* acted by removing a window screen.

(Emphases added.)

The addition of the defendant's name is inconsistent with the plain language of the indictment. The indictment did not allege that the defendant alone removed the window screen as the defendant suggests. Instead, the indictment alleged that *either* the defendant himself removed the window screen or that he acted in concert with two others in removing the window screen.

As such, the indictment charged the defendant as both a principal and accomplice and the State had two different options for proving attempted burglary. It could have proven that the defendant himself took a substantial step toward the commission of the burglary, *i.e.*, that the defendant himself removed the screen. *See State v. Munoz*, 157 N.H. 143, 147 (2008) (explaining that an indictment charging an attempt must allege an intent to commit a crime and an overt act in furtherance of the crime). However, the State also had the option of proving accomplice liability. *See State v. Young*, 159 N.H. 332, 340 (2009) ("evidence supporting each element of accomplice liability also [was] sufficient to support the conviction[] against the defendant"). Because the indictment clearly alleged both principal and accomplice liability, it provided sufficient notice to the defendant that he was charged with either removing the window screen himself or soliciting, aiding or attempting to aid another in removing the window screen. *See Munson*, 146 N.H. at 716 ("regardless of whether [the indictment] was intended to allege the means by which the defendant acted

in concert with [two others] or that the defendant acted as principal, the indictment 'notified the defendant of the charges he must be prepared to meet at trial.' " (brackets omitted)).

 Still, while acknowledging that an accomplice may be convicted on the basis of acts not specifically alleged in an indictment, *see State v. Therrien*, 129 N.H. 765, 769 (1987), the defendant contends that the removal of the window screen was the only act that "could be a substantial step toward the commission of the crime of burglary." The defendant's argument conflates the law of attempt with the law of accomplice liability. If the defendant had been indicted only for attempted burglary as a principal, the State would have been required to allege in the indictment and prove at trial the specific act committed in furtherance of the attempt. *See State v. Bean*, 117 N.H. 185, 187 (1977). However, since the defendant was indicted as an accomplice to an attempt, the indictment merely needs to allege conduct committed in the course of the attempt that constitutes a substantial step toward the commission of the attempt. Indeed,

> there is no further and independent requirement to identify the acts by which a defendant may have committed [the] offense, or to limit proof of guilt to acts specifically pleaded. Although there may be cases in which double jeopardy protection and reasonable trial preparation would require an allegation of the specific conduct by which an accomplice is supposed to have aided in the commission of the offense, such specification is not always required.

*Doucette*, 146 N.H. at 590 (quotation and citation omitted); *see also State v. Elliott*, 133 N.H. 759, 764 (1990) (explaining that an amendment of an indictment may be impermissible if it prejudices the defendant "either in his ability to understand properly the charges against him or in his ability to prepare his defense" (quotation omitted)).

The defendant argues that this is one of those rare cases where the failure to limit proof of the defendant's guilt to the facts specifically pleaded impermissibly altered the indictment and prejudiced him in his trial preparation. He contends that his strategy at trial relied upon his belief that the State would have to prove that he himself removed the window screen and that all of his cross-examination focused upon the lack of physical evidence linking him to the window screen.

In *Doucette*, the indictment alleged that the defendant, "acting in concert with [another], purposely caused the death of [the victim] by repeatedly stabbing her in the neck and abdomen." *Id.* at 584-85. The defendant argued that the language "by repeatedly stabbing her in the neck and abdomen" was an essential part of the indictment and that the jury had to

agree unanimously that he stabbed the victim in the neck and abdomen in order to convict him. *Id.* at 588. We determined that the indictment sufficiently informed the defendant of the offense with which he was charged by providing him with the date of the murder, the cause of death and the victim. *Id.* at 590; *see also Therrien*, 129 N.H. at 772 (explaining that the indictment did not need to list the defendant's possible acts as an accomplice where it alleged the death of a named victim, the date and place of death and described the stabbing that preceded the death).

■ ■ The indictment in the instant case informed the defendant of the date, location, and victim of the attempted crime, the substantial step taken by him or his accomplices in furtherance of that crime and the identities of his accomplices. This information was more than sufficient for the defendant to prepare his defense because it put the defendant on notice that the State would have to prove that he in some way solicited, aided, agreed or attempted to aid in the attempted burglary. Generally, there is no requirement that the State allege each of the defendant's possible acts as an accomplice. "[T]his is not a case in which double jeopardy and reasonable trial preparation required an allegation of the specific conduct by which the defendant was supposed to have aided in the commission of the offense." *Doucette*, 146 N.H. at 591. Moreover, to the extent the defendant prepared his defense based upon his belief that the State had to prove that he removed the window screen, his "only surprise was the trial court's application of the proper law." *State v. French*, 146 N.H. 97, 102 (2001) (quotation and ellipsis omitted). "[I]f any prejudice arose from these facts it was not undue prejudice." *Id.* (quotation omitted). Accordingly, the trial court's jury instruction did not impermissibly alter the indictment.

## II

The defendant next argues that the court erred when it failed to instruct the jury that his mere presence at the crime scene alone was insufficient for the State to meet its burden of proof. The State contends that the trial court's instruction adequately explained that the jury could not convict the defendant based solely upon his mere presence at the crime scene.

At trial, the court declined to give the "mere presence" instruction requested by the defendant because the court thought that doing so was "getting me very close, if not there, to starting to comment on the evidence or signal out something that was being emphasized by one [side] or the other." Instead, the court instructed the jury that the defendant could be found guilty as an accomplice to attempted burglary only if the State proved beyond a reasonable doubt that he "*actively* helped another or other persons, or *actively* participated or *actively* assisted another or other

persons, or *actively* attempted to help another or other persons to commit the crime of attempted burglary." (Emphases added.)

▮▮ While we disagree that the court would have impermissibly commented on the evidence if it had given the defendant's requested "mere presence" instruction, the court's failure to give the requested instruction does not constitute an unsustainable exercise of discretion. The crime of accomplice liability requires some active participation by the accomplice and mere presence at the crime scene alone is insufficient. *State v. Merritt*, 143 N.H. 714, 718 (1999). In this case, the court's instruction made clear that to find the defendant guilty, the jury had to conclude that he in some way actively aided or participated in the crime of attempted burglary. Accordingly, to the extent the jury had any question about the defendant's mere presence at the scene, the court's instruction adequately conveyed the jury's obligation to acquit if the State did not prove some active participation by the defendant. *State v. Seymour*, 140 N.H. 736, 745, *cert. denied*, 519 U.S. 853 (1996).

## III

▮▮ The defendant next argues that the court erred when it failed to respond to the jury's question by not unequivocally telling the jury that it could not find him guilty without finding that he removed the window screen. However, the defendant failed to preserve this issue for our review because he did not adequately raise it before the trial court. *See Lassonde v. Stanton*, 157 N.H. 582, 596 (2008). The appealing party has the burden to provide this court with a sufficient record to decide his issues on appeal and demonstrate that he raised the issues before the trial court. *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). A contemporaneous objection is necessary, and particularly appropriate, to preserve a challenge to a trial court's answer to a jury question. *State v. Kelly*, 160 N.H. 190, 194-95 (2010).

The defendant asserts that "[i]n chambers and on the record, defense counsel argued that the clear answer to the jury's question was 'no.'" However, he does not provide a citation to the record in support of this claim and the transcript does not demonstrate that the defendant ever proposed this answer to the jury question. *See Bean*, 151 N.H. at 250.

▮▮ The defendant contends that his earlier request for a jury instruction that the State must prove that the defendant himself removed the window screen was adequate to preserve this issue for appeal. However, proposed jury instructions or generalized objections to a trial court's instructions are insufficient to preserve specific assignments of error for appeal. *See, e.g., United States v. Zapata*, 546 F.3d 1179, 1189-90 (10th Cir.),

*cert. denied,* 129 S. Ct. 772 (2008), *cert. denied,* 129 S. Ct. 2069 (2009); *Collins v. Alco Parking Corp.,* 448 F.3d 652, 656 (3d Cir. 2006). Accordingly, we decline to address this argument.

## IV

Finally, the defendant contends that the trial court erred when it failed to dismiss the attempted burglary charge because the State failed to meet its burden to prove that he acted as an accomplice to the commission of the attempted burglary. The State asserts that we should decline to address this issue because the defendant did not raise the sufficiency of the evidence against him in the "issues presented" section of his brief or cite the sufficiency of the evidence standard anywhere in his brief. *See State v. Blackmer,* 149 N.H. 47, 49 (2003) ("a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review" (quotation omitted)). However, we will assume that the issue is properly before us.

Our standard for review in this area is well established:

To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt. Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom.

*Young,* 159 N.H. at 338 (quotation omitted).

Because the State charged the defendant as acting "in concert with others," evidence supporting each element of accomplice liability is sufficient to support the conviction. In order to prove accomplice liability, the State had to prove that: "(1) the accomplice had the purpose to make the crime succeed; (2) the accomplice's acts solicited, aided or attempted to aid another in committing the offense; and (3) the accomplice shared the requisite mental state for the offense." *Id.* (quotation and ellipsis omitted). The defendant contests the second element and contends that the State did not present any evidence that he actively participated in the attempted burglary.

We conclude that a rational jury could have found that the defendant aided in the attempted burglary even if the State did not present evidence

that the defendant specifically removed the window screen. While mere presence at a crime scene is insufficient to prove accomplice liability, the defendant's presence may be sufficient "if it was intended to, and does, aid the primary actor." *Merritt*, 143 N.H. at 718.

In this case, the evidence reveals more than simply the defendant's presence at the scene. Fitzpatrick heard noise coming from the right side of his home and observed three men hiding and then fleeing from the right side of his home late at night and, around the same time, another witness heard three men having a "panicked" conversation and then saw them fleeing together. Fitzpatrick subsequently found the bent window screen in the grass and saw smudges on the window that looked like fingerprints. He also later identified all three men as the men he saw that night and testified that he was sure one of them removed the screen. Additionally, the three men were found hiding near the crime scene and were uncooperative when questioned by police. Specifically, when police questioned the defendant regarding the whereabouts of any accomplices, the defendant was uncooperative, physically aggressive and used vulgar language. Based upon all of this evidence, the defendant's presence warrants a jury inference "beyond a reasonable doubt that he sought to make the crime succeed." *Id.*; *see also State v. Laudarowicz*, 142 N.H. 1, 6 (1997) (evidence was sufficient where defendant tried to deceive police and cover up his involvement in the crime). Therefore, viewing the totality of the evidence in the State's favor, we conclude a rational jury could have found that all rational inferences other than guilt had been excluded beyond a reasonable doubt.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.